[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
October 11, 2007
THOMAS K. KAHN
CLERK

No. 07-12084
Non-Argument Calendar

_____

D. C. Docket No. 01-00240-CR-KMM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ALEXANDRA CANNADAY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(October 11, 2007)**

Before BLACK, CARNES and MARCUS, Circuit Judges.

PER CURIAM:

Alexandra Cannaday appeals her nine-month sentence imposed for several

violations of her supervised release. Cannaday pleaded guilty on May 10, 2001, to conspiracy to import one or more kilograms of heroin, in violation of 21 U.S.C. §§ 952(a)(1) and 963. The district court sentenced her to 35 months imprisonment and five years supervised release, well below the sentencing guideline imprisonment range of 87 to 108 months. After serving her sentence, Cannaday began supervised release on January 16, 2004. In February 2005, Cannaday violated her supervised release by leaving the jurisdiction without permission. As a result, Cannaday's supervised release was modified to require her to live in a Community Corrections Center for 180 days. She was discharged from the CCC on June 7, 2006. Then, on January 18, 2007, Cannaday's probation officer requested the issuance of a summons alleging that Cannaday had again violated the terms of her supervised release.

The revocation petition charged that Cannaday had violated the terms of her supervised release by: (1) failing to report that she shared joint bank accounts with her husband from July 25, 2004, through February 18, 2005, despite providing joint bank account statements to immigration officials during these months as evidence of her marriage for the purpose of seeking residency for her husband, Cesar Taboada; (2) failing to report on her April 2004, April 2005, and April 2006 monthly supervision reports federal income tax refunds she and Taboada received;

(3) falsely denying that she and Taboada had a marital relationship and were living in the same residence, while reporting to immigration officials on June 14, 2004, and on February 6, 2006, that she remained in a committed relationship with him; and (4) failing to notify the probation officer within 72 hours of being questioned by law enforcement officers on June 14, 2004.

The district court held a revocation hearing on April 17, 2007. Following witness testimony, the court reviewed Cannaday's conduct during the term of her supervised release, noting that previously she had left the jurisdiction without permission by traveling to Lexington, South Carolina on February 17, 2005. The court then revoked Cannaday's supervised release and sentenced her to a term of nine months imprisonment, to be followed by an extended 51-month term of supervised release. When asked whether she had any objections to the court's findings of fact or manner in which sentence was pronounced, Cannaday stated she had no objections other than those stated on the record.

Cannaday appeals the district court's judgment sentencing her to nine months incarceration and 51 months supervised release for violating her current supervised release, contending that the court: (1) abused its discretion in revoking her supervised release because the government presented insufficient evidence to prove the alleged violations by a preponderance of the evidence; and (2) erred

procedurally and substantively in sentencing her to nine months imprisonment because it did not consider any of the 18 U.S.C. § 3553(a) sentencing factors before imposing the maximum sentence under the guidelines, and the violations, if any, were de minimis and did not warrant incarceration. We disagree and affirm the district court.

Cannaday first contends that the district court abused its discretion by finding her in violation of her supervised release. She argues that Theresa Graham, Cannaday's probation officer and the government's sole witness, failed to present evidence sufficient to prove each of the four alleged violations by a preponderance of the evidence. Specifically, Cannaday asserts the following facts in response to each of the alleged violations of her supervised release:

(1) Regarding the allegations that she had a joint bank account with Taboada, Graham acknowledged at the revocation hearing that she could not dispute Cannaday's claims that the account was never used and had very little money in it;

(2) With respect to the joint tax returns, Cannaday argues that Graham acknowledged that she could not dispute Cannaday's claim that she never received any tax refund;

(3) Cannaday contends that the record reflects that she provided truthful

4

information to the probation office about her interview with Immigration and Naturalization Service agents. She also argues that the only reason she was interviewed by immigration officials was because she attended Taboada's immigration interview as part of his citizenship process, and no evidence was introduced to the contrary; and

(4) In terms of the information she provided to the probation office regarding whether Taboada lived with her, Cannaday argues that she always provided truthful information to the probation office and that Graham admitted during the revocation hearing that Cannaday told her Taboada was living with her.

We review the district court's conclusion that the defendant violated the terms of her supervised release only for abuse of discretion. United States v. Copeland, 20 F.3d 412, 413 (11th Cir. 1994). We are bound by the district court's findings of fact unless they are clearly erroneous. United States v. Almand, 992 F.2d 316, 318 (11th Cir. 1993). A district court may "revoke a term of supervised release . . . if the court . . . finds by a preponderance of the evidence that the defendant violated a condition of supervised release." 18 U.S.C. § 3583(e)(3).

In a review of a probation revocation, "'all that is required is that the evidence reasonably satisfy the judge that the conduct of the probationer has not been as good as required by the conditions of probation; evidence that would

5

establish guilt beyond a reasonable doubt is not required.'" United States v. Robinson, 893 F.2d 1244, 1245 (11th Cir. 1990) (citation omitted); see also Almand, 992 F.2d at 318 n.5 (discussing that the analysis of the revocation proceedings relating to probation and supervised release are "essentially the same"). "The credibility of a witness is in the province of the factfinder and [we] will not ordinarily review the factfinder's determination of credibility." Copeland, 20 F.3d at 413.

The terms of Cannaday's supervised release required her to: (1) submit complete and truthful monthly supervision reports; (2) truthfully answer all inquiries by her probation officer; and (3) notify the probation officer within 72 hours of being questioned or arrested by a law enforcement officer. The district court in this case did not abuse its discretion in finding Cannaday violated her supervised release.

Regarding Cannaday's failure to report that she and Taboada shared a joint bank account, Graham's testimony established that Cannaday submitted untruthful information in her monthly reports. Cannaday asserted in her reports that she did not share a bank account with anyone, but she simultaneously provided joint bank account statements to immigration officials in an effort to assist Taboada in his residency application. Graham admitted that Cannaday indicated that she did not

use the joint bank account, but it was the failure to report the existence of the joint account, not the contents or use of the account, that was a violation.

Similarly, with respect to the failure to report income from joint tax refunds, Graham's testimony established that Cannaday submitted untruthful information in her monthly reports. Cannaday failed to report that she and Taboada received joint tax refunds from the Internal Revenue Service to the probation office, but she simultaneously provided to the INS joint tax returns indicating that there had been annual tax refunds. Graham admitted that Cannaday had told her that she received no proceeds from the tax returns, but this is irrelevant because it is the failure to report the income, not what was done with that income, that constituted the violation.

As to Cannaday's failure to answer truthfully when Graham questioned her about her marital relationship and whether Taboada lived with her, no evidence was introduced showing that Cannaday provided untruthful information to the probation office. Cannaday initially told Graham that Taboada did not live with her because Taboada had "done her wrong." However, Graham admitted that on June 28, 2005, Cannaday told her that Taboada was now living with her, and when Graham questioned Cannaday about why she was attending Taboada's immigration proceedings, Cannaday told her that she was trying to "help him out"

because they had been married for a long time. This is consistent with documents Cannaday submitted to immigration officials, which indicated that she and Taboada were in a committed relationship. Furthermore, regarding Cannaday's failure to report her June 14, 2004, meeting with immigration officials within 72 hours, no evidence was introduced showing that she failed to inform the probation office of the meeting within 72 hours after it occurred. Nevertheless, because Graham's testimony established that Cannaday violated conditions of her supervised release by failing to submit truthful and complete monthly supervision reports and by failing to answer truthfully all of Graham's inquiries, the district court did not abuse its discretion in finding her in violation of her supervised release.

Cannaday next contends that the nine-month sentence imposed by the district court is both procedurally and substantively unreasonable because: (1) the court failed to consider the statutory factors under 18 U.S.C. § 3553(a); and (2) Cannaday's violations of her supervised release, if any, were de minimis technical errors that did not warrant incarceration. We review a sentence imposed upon the revocation of supervised release for reasonableness. United States v. Sweeting, 437 F.3d 1105, 1106–07 (11th Cir. 2006) (per curiam). The burden of proving that the sentence is unreasonable rests on the defendant. United States v. Talley, 431

F.3d 784, 788 (11th Cir. 2005) (per curiam).  "After <u>Booker</u>,[1] a sentence may be reviewed for procedural or substantive unreasonableness.  A sentence may be unreasonable if it is the product of a procedure that does not follow <u>Booker</u>'s requirements, regardless of the actual sentence.  Additionally, a sentence may be substantively unreasonable, regardless of the procedure used."  <u>United States v. Hunt</u>, 459 F.3d 1180, 1182 n.3 (11th Cir. 2006).

Upon finding that a defendant violated supervised release, the district court may revoke the term of supervised release and impose a term of imprisonment after considering various factors set out in 18 U.S.C. § 3553(a).  The term of imprisonment cannot exceed the statutory maximum, which is determined by the class of the violation. 18 U.S.C. § 3553(a).  Relevant factors in determining the length of imprisonment upon revocation include the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence imposed to afford adequate deterrence to criminal conduct, and the kinds of sentences and sentencing ranges established under the applicable guidelines and policy statements issued by the Sentencing Commission.  18 U.S.C. § 3553(a)(1), (2)(B), (4)(B).  However, "nothing in <u>Booker</u> or elsewhere requires the district court to state on the record that it has explicitly considered each of the § 3553(a)

---

[3] <u>United States v. Booker</u>, 543 U.S. 220, 125 S. Ct. 738 (2005).

9

factors or to discuss each of the § 3553(a) factors." United States v. Scott, 426 F.3d 1324, 1329 (11th Cir. 2005) (non-revocation case); see also United States v. Dorman, 488 F.3d 936, 944 (11th Cir. 2007) (finding that the district court's consideration of a number of the sentencing factors was sufficient, even though it never explicitly articulated that it had considered the § 3553(a) factors).

Chapter 7 of the sentencing guidelines governs violations of supervised release and contains policy statements, one of which provides recommended ranges of imprisonment applicable upon revocation. United States Sentencing Guidelines § 7B1.4 (2000). We have consistently held that the policy statements of Chapter 7 are merely advisory and not binding. United States v. Aguillard, 217 F.3d 1319, 1320 (11th Cir. 2000) (per curiam). Thus, while the district court is required to consider the policy statements, it is not bound by them. United States v. Brown, 224 F.3d 1237, 1242 (11th Cir. 2000).

The statutory maximum sentence that the district court could have imposed upon revocation of Cannaday's supervised release was five years imprisonment. 18 U.S.C. § 3583(e)(3). And the sentencing guidelines recommended a range of imprisonment from three to nine months. U.S.S.G. §§ 7B1.1(a)(3)(B), 7B1.4(a).

Cannaday argues that the district court acted unreasonably procedurally by failing to consider the § 3553(a) factors. We conclude that it did not. The district

10

court explicitly considered Cannaday's history and characteristics, noting that she had previously violated the terms of her supervised release and had provided Graham with a false written statement denying the violation. The court also considered the nature and circumstances of the offense, noting that there was enough evidence to "convict her and [Taboada] for marriage fraud or false statements before INS."

Moreover, the court's comments regarding Cannaday's repeated violations of her supervised release following an initially lenient sentence reflect that it considered the need for the sentence imposed to afford adequate deterrence to criminal conduct. Thus, it is evident that the district court implicitly considered the § 3553(a) factors, even though it did not explicitly mention them.

Cannaday also contends that the nine month sentence imposed by the district court was substantively unreasonable because if any violations did occur, they were so minor that they did not warrant incarceration. We disagree and find that the district court's sentence was not substantively unreasonable. Because the district court did not exceed the recommended range, there was no need for the court to indicate its consideration of the Chapter 7 policy statements, and Cannaday never referred to them during the revocation hearing. In light of the fact that Cannaday repeatedly violated her supervised release, it was reasonable for the

11

district court to sentence her to nine months incarceration, which was within the range specified by the sentencing guidelines.

**AFFIRMED.**